Staples, J.
The petitioner filed her application in the circuit court for the city of Richmond, stating that her husband was in his lifetime a householder and the head of a family; that he died on the 18th of January 1875, leaving the petitioner, his widow, and five infant children surviving him; that her said husband was possessed only of personal estate at the time of his death, and that he had not selected or claimed the homestead to which he was entitled. The petitioner therefore prayed the court to appoint commissioners to *357 ■assign the same to her in said property in the manner ■prescribed by law.
The circuit court refused the application, and thereupon the petitioner applied to this court for a mandamus. In response to the rule issued against him, the Judge of the circuit court has filed an answer stating at length the ground upon which his refusal was based. It is necessary to a proper understanding of these .grounds we should have before us so much of the act of 1870 as relates to the subject-matter of inquiry. That act is contained in chapter 188, Code of 1878, page 1168. The tenth section under which this question arises is as follows:
“If any such householder or head of a family shall have departed this life since the adoption of the present constitution, leaving a widow or infant children, and such homestead shall not have been selected or assigned in the lifetime of said householder, she, if remaining unmarried, or they, if she marry or die before such selection, shall be entitled to claim the same, and the court shall appoint commissioners to assign the same in the same manner that commissioners are appointed to assign dower.”
There are other provisions in this section, but it is unnecessary to cite them, as .they have no immediate connection with the matter before us.
The learned judge of the circuit court is of opinion that this section applies only to the case of a husband or head of a family dying between the adoption of the constitution and the date of the act of July 1870. According to his view, until the passage of that act, or some legislation by the general assembly, the provisions of the constitution on the subject of the home.stead were wholly inoperative. If therefore, the householder or head of the family had died between *358 the two periods mentioned, his widow or minor children would be deprived of the benefit secured by the constitution. To obviate this difficulty, the section already quoted was adopted, authorizing them to do what the householder or head of a family might and probably would have done had he been allowed to assert his claim to the homestead exemption.
But where the householder or head of the family lived until after the passage of the act, and refused or declined to avail himself of the provisions intended for his benefit, his widow and minor children, claiming-only through him, cannot be permitted to appropriate his estate to the exclusion of creditors and the adult, children. And so the legislature must have intended in adopting the section under consideration. The peculiar phraseology of that section furnishes very persuasive evidence of this intention: “If any such householder or head of a family shall have departed this life since the adoption of the present constitution words obviously referring to some antecedent period-Whereas if the design had been to give the law a prospective operation, the additional words, “or shall hereafter die,” would have been inserted, thus placing the legislative intent beyond all cavil or controversy.
This is the construction given to the statute by the learned judge of the circuit court, and in support of it he has presented a very elaborate argument. We are however of opinion that this is not the correct construction. The question is one of the first impression in this state, and from its general importance deserves careful consideration. The phraseology of the section under consideration, it must be confessed, is somewhat peculiar, but the difficulty of ascertaining its precise meaning is more apparent than real.
The learned counsel for the petitioner has called our *359 attention to several statutes in the Code of 1860, in which the same peculiarity of language is employed. Tor example: In the first section of chapter 174 it is provided that “where any suit, motion, or other proceeding shall have remained pending a year,” &c. There are other instances of the same kind not necessary to be quoted, all of them manifestly having a prospective operation. Similar examples may be found in the chapter relating to the homestead exemptions, as in the sixteenth section, wherein it is provided that “Any householder or head of a family who shall have failed to select and set apart a homestead and personal property according to the provisions of the foregoing sections, and who desires to avail himself of the benefit of the exemptions provided for in this act,” &c. These examples are sufficient to show that the peculiar phraseology used in the tenth section has been adopted in the other sections—that it has no special significance, certainly none restricting its operation to the case of the death of the householder before the passage of the act. That very section (the tenth), in connection with the twelfth section, furnishes unmistakeable evidence that it was designed to extend to cases occurring after its adoption. After declaring, as already stated, that if the householder or head of a family shall have departed this life since the adoption of the present constitution, leaving a widow or infant children, it proceeds as follows: “ And such homestead shall not have been selected or assigned in the lifetime of said householder” blow this section is not only superfluous but senseless, if the section is to be confined to the case of the householder dying before the passage of the act, because until that act was passed it was impossible for the householder to make selection or assignment of the homestead. It will also be observed that the *360 twelfth section, after making provision for the terms and conditions upon which personal estate may be held in the place of the homestead, declares, “And in case no such selection (that is of personal property) shall have been made, and the householder be dead, leaving a widow or infant children, she may, if unmarried, make such selection, or if she be dead or married, the infant children may, &c., by their guardian or their next friend make the same.” This is the law which controls when there is no real estate. It is the law under which the petitioner claims. It omits the words, “since the adoption of the present constitution,” used in the tenth section, upon which so much reliance is placed. The language is substantially the same as that of the sixteenth section, which confessedly extends to every class of cases.
And it would seem impossible to resist the conclusion that the object of the provision was to give to the widow and infant children the privilege of selection in all cases where the husband or father had failed to exercise it in his lifetime. If we construe these sections (the tenth and twelfth) as speaking, not from the date of their enactment, but as at the death of the householder or head of a family, and as applying to all cases arising since the adoption of the constitution, whether the death occurred before or after those sections were adopted, we have some explanation of the peculiar phraseology just adverted to.
This construction is much strengthened by a careful consideration of the policy which has dictated these homestead exemptions—a policy suggested by considerations both of a political and a benevolent character. Political, because the homestead is regarded as tending to foster views of manly independence in the citizen, and as contributing to the settlement of a country *361 by inviting immigration, and by bolding out inducements to the improvement of property. Benevolent, because the possession of the homestead is the security of the family against the improvidence, the follies and the imprudences of the husband or father. Householder, or head of a' family, are the terms pervading these homestead enactments—a home for the destitute and helpless, secure from financial ruin and the pursuit of creditors. These objects cannot, in many cases, be accomplished. They may be, and •often are, defeated by the act of the owner himself, because the legislative power cannot interfere with a man’s dominion of his own property while he lives. Homestead laws prevail, perhaps, in a large majority of the states. JSTo one can look through’their various statutes without at once seeing that “ protection of the family” is one of the leading ideas upon which these exemptions are founded. In some of the states the claim of the widow and minor heirs to a homestead .in the estate of the father has been the subject of animated discussion, and in every instance it has been sustained by the courts. O’Docherty v. McGloen, 25 Texas R. 67; Hode v. Johnson & Heath, 40 Georgia, 439; Roff, Sims & Co. v. Johnson, Ibid., 555.
Are we to suppose that the legislature of Virginia intended to depart from the policy of the other states in this particular?
There is nothing in the various statutes on the subject to indicate that purpose. On the contrary, upon 'looking through them, we find everywhere the evidences of a design to confer upon the family the benefits of these exemptions in the lifetime and after the •death of the owner of the estate. It is a great mistake to suppose that the husband or father, because he fails to claim the homestead in his lifetime, thereby *362 manifests a purpose or wish that his estate shall be appropriated to the claims of his creditors. His failure to assert his claim may, and often does, proceed from very different causes—want of intelligent counsel, or sudden death, or from a spirit of procrastination, the besetting infirmity of many minds. But whatever may be his motive, if he has done no act to encumber or charge his estate, it is competent for the legislature to prescribe how and to whom the estate shall go after the death of the owner, and the terms and conditions upon which it is to be used and enjoyed. If the homestead laws be founded upon considerations of sound policy and humanity, there is as much reason for extending their benefits to the widow and minor children, where the householder has failed to claim the exemption, as in those cases in which he has asserted-his claim. Deprived of the protection and the support of the head of the family, the widow and minor-children have but stronger claims to the benefits of the homestead. In many cases there is no real estate, and of course no dower, as in the case before us, and the little pittance is often swept away by the claims of creditors, while the widow, with a family of helpless children, is turned adrift to struggle with poverty and misfortune. It is difficult to believe that the legislature could ever have designed so palpable a departure from the spirit of the constitution and the whole object and policy of the homestead exemptions. If the householder has waived his privilege, that, of course, presents an entirely different question. But if he has not waived it, and has merely failed to claim it while he lived, his widow and children should be permitted to assert the claim, as he would probably have done under different circumstances. At all events, the court ought so to-decide until the legislature shall otherwise provide in *363 terms plain and unmistakeable. Sueb intention cannot be gathered from doubtful and obscure phrases of equivocal import. •
No one can justly complain of this, certainly notthe creditor, as he trusted the debtor with full notice of the consequences which might result from the credit he was extending. It is said, however, that the effect of this construction is practically to exclude the adult children from their share of the ancestor’s estate, and to give it to the widow and minors, when there are no debts, and in many instances contrary to the wishes of the head of the family. It is sufficient to say that the mere appointment of commissioners settles nothing, except perhaps that the widow and minor children are entitled to select and set apart a homestead in the estate of the father or head of the family. It certainly does not adjudicate the rights of the creditors or the adult heirs unless they are parties to the proceeding. Whether the homestead when assigned is good against them, depends upon a variety of questions to be determined in some direct proceeding for that purpose. It has been held in Georgia and North Carolina certainly, and probably in other states, that the object of the homestead laws is the security of the debtor and his family against the demands of the creditor, and where there are no debts the homestead cannot be held' against the adult children, and the assignment does not preclude them from asserting their title to a share of the estate. Kemp v. Kemp, 42 Georgia 523; Hager v. Nixon, 69 North Car. 108.
Upon these questions this court is not now called on to express any opinion. It is sufficient to say that the petitioner and her children are entitled to have assigned them, and to hold exempt from levy, seizure or sale so much of the personal estate of the father or *364 head of the family as he himself would be entitled to select and set apart were he now living and asserting his claim to the- homestead. They stand, with reference to his creditors, in the same position they would have occupied had the householder himself asserted his claim, and then died, leaving the petitioner and the minors surviving him.
In regard to the constitutional question the court had at one time some difficulty. The doubt was, whether it was competent for the legislature consistently with the constitution to allow to the widow and minor children a homestead in the property of the householder, when he. himself had failed to claim an exemption in their behalf. It is proper to say that this difficulty has been removed by a more careful consideration of the subject, and more particularly by the arguments of the learned gentlemen who addressed the court on that subject. The provisions in favor of the widow and minor children are believed to be in accordance with the spirit of the constitution and the whole object and policy of the homestead exemption.
Christian and Anderson, J’s, concurred in the opinion of Staples, J.
Moncure P. dissented.
Mandamus issued.